IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA for use and
benefit of SUMMIT ELECTRIC SUPPLY
COMPANY, INC.,

      Plaintiff,

v.                                  Case No. 10-CV-811 JEC/RHS

ALUTIIQ INTERNATIONAL SOLUTIONS,
LLC; and SAFECO INSURANCE COMPANY
OF AMERICA,

      Defendants,

and

ALUTIIQ INTERNATIONAL SOLUTIONS,
LLC; and SAFECO INSURANCE COMPANY
OF AMERICA,

      Third-Party Plaintiffs,

v.

OIC MARIANAS INSURANCE
CORPORATION,

      Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Third-Party Plaintiff OIC Marianas Insurance Corporation's Amended Motion to Dismiss First Amended Third-Party Complaint for Lack of Personal Jurisdiction and Insufficient Service of Process*, filed January 11, 2011 (Doc. 37) ("Motion").

**I.      BACKGROUND**

This lawsuit arises under the Miller Act, 40 U.S.C. § 3133(b)(3)(B).  Defendant Alutiiq

International Solutions ("Alutiiq") was the general contractor for construction of the Ojo Encino

Day School in McKinley County, New Mexico ("the Project").  *See* Complt. at ¶ 6, filed August 30,

2010 (Doc. 1).  Alutiiq subcontracted with NCC Electrical Services, Inc. ("NCC"), to which Plaintiff

Summit provided equipment and materials required and used in the construction of the Project.  *Id.*

at ¶¶ 8-9.  Plaintiff Summit contends that NCC owes it $208,142.97 plus service charges and

interest, as well as attorney's fees and other costs of collection.  *Id.* at ¶ 11.  Having given notice of

its claim to Alutiiq, Summit claims that Defendant Safeco Insurance Company of America

("Safeco") must pay this debt pursuant to the Miller Act payment bond it issued.  *Id.* at ¶¶ 7 and 13-

14.  Summit therefore brought this action against both Alutiiq and Safeco ("the Defendants")

pursuant to the bond and, alternatively, seeking damages in *quantum meruit* from the Defendants

for the value of the equipment and materials it provided.  *Id.* at p. 3-5.

The Defendants do not deny that Summit is owed money relating to the Project.  They

brought a Third-Party Complaint in this action against OIC Marianas Insurance Corporation

("OIC").  *See* Third-Party Complt., filed October 14, 2010 (Doc. 13).  Defendants/Third-Party

Plaintiffs Alutiiq and Safeco contend that NCC provided a payment bond for its electrical-based

work on the Project to Alutiiq.  *Id.* at ¶¶ 7-8.  Pursuant to NCC's payment bond, Third-Party-

Defendant OIC assumed liability to Alutiiq for any failure on NCC's part to pay its suppliers and

subcontractors.  *Id.* at 9.  The Defendants/Third-Party Plaintiffs therefore contend that OIC is liable

to Summit for any losses relating to the Project.

OIC seeks to dismiss the Third-Party Complaint on the grounds that the Court lacks personal

jurisdiction and that service of process was insufficient.  *Motion* at 1-2.  The Defendants/Third-Party

Plaintiffs contend that OIC has sufficient minimum contacts with New Mexico to satisfy long-arm

jurisdiction because it entered into a payment bond with a New Mexico-based contractor, obligating itself (in the event of non-payment by NCC) to pay subcontractors and suppliers located in New Mexico, all relating to a construction project in New Mexico. *Opposition by Alutiiq and Safeco to OIC Marianas Ins. Corp.'s Am. Motion* at 8-9, filed January 24, 2011 (Doc. 38) ("Response"). Additionally, the Defendants/Third-Party Plaintiffs argue that NCC's performance under the bond with OIC was supposed to occur in New Mexico. *Id.* at 9.

## II.    LEGAL STANDARD

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). This burden is light in the preliminary stages of litigation. *Id.* "When a district court rules on a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). To meet this burden, the plaintiff must show "facts that if true would support jurisdiction over the defendant." *Id.* To defeat the plaintiff's prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Throughout the Court's inquiry, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz*, 55 F.3d at 1505 (quoting *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F2d 731, 733 (10th Cir. 1984)). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving

party.'" *Id.* (quoting *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n. 2 (10th Cir.1983)).   In other words, "affidavits and pleadings will be considered in the light most favorable to jurisdiction." *Zavala v. El Paso County Hosp. Dist.*, 2007-NMCA-149, ¶ 13, 143 N.M. 36, 172 P.3d 173.  *See also Alto Eldorado Partnership v. Amrep*, 2005-NMCA-131, ¶ 15, 138 N.M. 607, 124 P.3d 585 (holding that the standard of review on a Rule 12(b)(2) motion in the absence of an evidentiary hearing "resembles that of summary judgment"). It is only the well-pled facts of the plaintiff's complaint, "as distinguished from mere conclusory allegations," that must be accepted as true.  *Wenz*, 55 F.3d at 1505.

## III     DISCUSSION

In a federal question case, the Court may exercise personal jurisdiction over nonresident defendants if: (1) the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) the exercise of jurisdiction comports with due process.  *See Peay v. BellSouth Med. Asst. Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).

### A.     The Territorial Limits of Effective Service Do Not Apply.

Proper service "establishes personal jurisdiction over a defendant who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued."  Fed.R.Civ.P. 4(k)(1)(B).  Personal jurisdiction may also be established "when authorized by a federal statute."  Fed.R.Civ.P. 4(k)(1)(C).

As a practical matter, OIC cannot be served within the judicial district of New Mexico or within 100 miles of this Court.  Therefore, it contends that, pursuant to Fed.R.Civ.P. 4(k), personal jurisdiction is lacking and that Alutiiq's third-party claims against it must be dismissed. *See generally Motion*.

OIC erroneously fails to consider the Miller Act and whether it "potentially confers

4

jurisdiction by authorizing service of process on the defendant." *Peay v. BellSouth Med. Asst. Plan*, 205 F.3d at 1209.  Given that it is "highly remedial in nature," the Miller Act must be liberally construed so as "to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *United States for benefit and on behalf of Sherman v. Carter*, 353 U.S. 210, 216, (1957).  While it does not specify particular procedures for obtaining service of process, the Miller Act does require that lawsuits such as the instant case be brought "(A) in the name of the United States for the use of the person bringing the action; and (B) in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy."  40 U.S.C. § 3133(b)(3).

The Tenth Circuit recognized potential problems with proper service upon nonresident sureties like OIC given the territorial limits of service under Rule 4 and the Miller Act's requirement that suits be brought in the district where the contract was to be performed. *Limerick v. T.F. Scholes, Inc.*, 292 F.2d 195, 196 (10th Cir. 1961).  "Congress cannot have intended that such an act be rendered ineffective by placing a limitation on place of suit which would render such suit useless for the grant of relief against one who could not be served within the state wherein the suit was filed." *Limerick*, 292 F.2d at 196.  The Tenth Circuit therefore held that "[t]he practical operation of the Miller Act requires service beyond the territorial limits of the state." *Id.  See also id.* at 197 ("The Miller Act provisions limiting venue and jurisdiction over the subject matter make necessary extraterritorial service of process not only over original defendants but also over third-party defendants to prevent an undesirable and unnecessary multiplicity of suits.").  Thus, the plaintiff in *Limerick*, who supplied construction materials to a subcontractor, was able to sue the surety on the prime contractor's bond in Colorado, even though the surety was served in Arkansas, which would ordinarily be considered beyond the

territorial limits of effective service pursuant to Fed.R.Civ.P. 4(k).  *Id.*

The Miller Act is now recognized as one of many federal statutes that provides for

nationwide service of process.  Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1125 n.4 (3d ed. 2002 & Supp. 2010) (citing *Limerick*, 292 F.2d 195 (10th Cir.

1961)).  *See also* Lucas Martin, J.D. and Anne Payne, J.D., 17 Am.Jur.2d Contractors' Bonds §

176 (March 2011) ("Although the [Miller] Act contains no explicit provisions for extraterritorial

service of process, the courts have held that the Act authorizes the appropriate Federal District

Court to obtain personal jurisdiction over a defendant through service of process on them in

whatever district they might be found.").  Thus, the territorial limits of service under

Fed.R.Civ.P. 4(k) do not apply.

**B.**     **Alutiiq's Service of Process Upon OIC Is Effective.**

Because OIC is a corporation, the Court looks to Fed.R.Civ.P. 4(h), governing service of

process upon corporations.  *See id.* at 1210.  For service upon corporations such as OIC, which

are not located within a judicial district of the United States, *see Motion* at 2 (noting that OIC is

organized and exists under the Commonwealth of the Northern Mariana Islands),service may be

accomplished "in any manner prescribed by Rule 4(f) for serving an individual, except personal

delivery under (f)(2)(C)(i)."  Fed.R.Civ.P. 4(h)(2).  OIC may therefore be served:

> (1)     by any internationally agreed means of service that is reasonably
> calculated to give notice, such as those authorized by the Hague
> Convention on the Service Abroad of Judicial and Extrajudicial
> Documents;
>
> (2)     if there is no internationally agreed means, or if an international
> agreement allows but does not specify other means, by a method that is
> reasonably calculated to give notice:
>
> > (A)     as prescribed by the foreign country's law for service in that
> > country in an action in its courts of general jurisdiction;

(B)     as the foreign authority directs in response to a letter rogatory or letter of request; or

(C)     unless prohibited by the foreign country's law, by: . . . (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3)     by other means not prohibited by international agreement, as the court orders.

Fed.R.Civ.P. 4(f).  Where the defendant has received actual notice of the suit, federal courts generally take a permissive attitude toward the mechanism to effect service under Rule 4.  *See Kitchens v. Bryan County Nat'l Bank*, 825 F.2d 248, 255-56 (10th Cir. 1987) (finding that service of process "complied with the spirit, if not the letter of Fed.R.Civ.P. 4" where the defendant actually received notice).

Here, OIC admits that "a local process server in the City of Saipan on the Northern Mariana Islands, came into OIC's Offices in Saipan and delivered a copy of the Summons and Complaint." *Motion* at 3.  OIC further admits that Laurie Sturges "accepted the materials as OIC's registered agent." *Id.*  Indeed the Return of Service filed by Alutiiq in this case indicates that Process Server Rainaldo S. Agulto served Ms. Sturges, who is designated by law to accept service of process for OIC, with a copy of the Complaint on November 19, 2010.  *Return of Service* at 2, filed January 4, 2011 (Doc. 35).  As a practical matter, service was effectual in that OIC's attorneys in this matter were contacted December 8, 2010 and filed an entry of appearance in the case on December 9, 2010.  *Motion* at 3; *Entry of Appearance*, filed December 9, 2010 (Doc. 23).  Based on these facts, the Court finds that OIC was effectively served under Fed.R.Civ.P. 4.

**C.     The Court's Exercise of Personal Jurisdiction Over Third-Party Defendant OIC Comports With Due Process.**

To determine whether personal jurisdiction exists over a non-resident defendant such as

OIC, the Court must look to New Mexico law. *See Benally v. Amon Carter Museum of Western*

*Art*, 858 F.2d 618, 621 (10th Cir. 1988).  The New Mexico "long-arm" statute provides

> Any person, whether or not a citizen or resident of this state, who in person or
> through an agent does any of the acts enumerated in this subsection thereby
> submits himself . . . to the jurisdiction of the courts of this state as to any cause of
> action arising from: (1) the transaction of any business within this state. . . .

NMSA 1978, § 38-1-16(A)(1).  Although the statute enumerates acts that a non-resident

defendant must commit before long-arm jurisdiction may be exercised, "the determination of

whether a defendant committed such an act has been removed." *Zavala v. El Paso County Hosp.*

*Dist.*, 2007-NMCA-149, ¶ 10, 143 N.M. 36, 172 P.3d 173.  The question for the Court is

"whether the defendant 'had the requisite minimum contacts with New Mexico to satisfy due

process.'" *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2008-NMCA-153, ¶ 36, 145 N.M. 328,

198 P.3d 354 (quoting *Zavala*, 2007-NMCA-149 at ¶ 10).  "In other words, the plaintiff must

show that the defendant engaged in 'some act by which the defendant purposefully avail[ed]

itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits

and protections of its laws.'" *Zavala* at ¶ 11 (quoting *Alto v. Eldorado Partnership*, 2005-

NMCA-131, ¶ 31, 138 N.M. 607, 124 P.3d 585).  In order to obtain personal jurisdiction, the

plaintiff must also show that its injuries "arise out of" the defendant's contacts.  *See, e.g.,*

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

### 1.    OIC's Contacts With New Mexico Are Not Random and Are Sufficient to Satisfy "Purposeful Availment."

To determine "purposeful availment," the Court considers OIC's activities directed

toward New Mexico. *See id.*  "'Random, fortuitous, or attenuated contacts' are insufficient to

fulfill the requirement." *Id.* (quoting *Sanchez v. Church of Scientology of Orange County*, 115

N.M. 660, 664, 857 P.2d 771, 775 (1993)).  "Purposeful availment" exists over a party where it:

(a) commits an intentional act, (b) that was expressly aimed at a forum state, with (c) knowledge

that the brunt of the injury would be felt in the forum state.  *Dudnikov v. Chalk & Vermilion Fine*

*Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (interpreting *Calder v. Jones*, 465 U.S. 783, 104

S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

OIC's actions in relation to the performance and payment bond it issued to NCC satisfy

the first prong of the  *Dudnikov/Calder* test.  The facts in this case are undisputed that before

issuing the bond, OIC required NCC and Alutiiq to complete certain conditions—namely, OIC

required that NCC and Alutiiq "would have to agree to utilize NAFMS as the funds control

manager for the contract" and that Alutiiq would have to "complete a Site Inspection Report so

that the [OIC] Board of Directors could determine whether the day school project was on track

and whether there had been any incidents or scheduling set-backs with NCC."  *See Motion* at Ex.

3, ¶¶ 14-15.  Thereafter, OIC issued a performance and payment bond to NCC in the amount of

$1,301,018.00 and subsequently increased the bond by over a million dollars, to $2,414,001.88.

*Id.* at ¶¶ 20-22.  Because OIC cannot credibly contend that these actions were not intentional, the

first prong of the *Dudnikov/Calder* test is met.

The second prong requires that OIC's contracting with NCC be "expressly aimed" at

New Mexico.  *See Dudnikov*, 514 F.3d at 1072.  Here, the focus is on OIC's intentions in

entering into the bond agreement; it is not required that OIC have actual physical contacts with

New Mexico.  *See Burger King*, 471 U.S. at 476 ("So long as a commercial actor's efforts are

'purposefully directed' toward residents of another State, we have consistently rejected the

notion that an absence of physical contacts can defeat personal jurisdiction there.").  The only

arguable aim in this case was at New Mexico.  The company OIC bonded is located in New

Mexico.  The project for which the bond was issued is located in New Mexico¹.  The entire

purpose of the bond was to pay contractors and suppliers, at least the majority of whom OIC

should reasonably have anticipated to be from New Mexico.  This prong of the *Dudnikov/Calder*

test is therefore met.

As to the third prong, the Court finds that OIC knew the brunt of the injury from its

actions aimed at New Mexico would be felt in New Mexico.  First and foremost, OIC must

expect, due to the nature of the payment and performance bond it issued, that NCC would be

damaged in the event that it failed to honor the bond.  Second, it is equally obvious that OIC had

to have expected the construction project, *located in New Mexico*, would suffer.  In the Court's

view, the only ways OIC can claim that it did not purposefully avail itself of the privileges of

acting in New Mexico are that (1) it was entirely ignorant of the nature of the payment and

performance bond it issued or (2) it never intended to honor the bond to begin with.  Given

OIC's efforts at the outset of its involvement with NCC and the Defendants/Third-Party

Plaintiffs—i.e., requesting a site inspection report and requiring NCC to use NAFMS as the

funds control manager for the contract—the Court finds that OIC acted purposefully in availing

itself of the benefits and protections of New Mexico law.

Decisions by New Mexico courts and the United States Supreme Court confirm the

Court's conclusion.  For instance, the New Mexico Supreme Court found purposeful availment

---

¹OIC contends that the Project is actually located on Navajo Trust land.  *Reply* at 5-6.
Therefore, OIC argues that Navajo Tribal Courts would have jurisdiction over any default by
NCC.  *Id.* at 6.  Indeed, OIC argues it "was not insuring a 'risk located in New Mexico' so much
as a 'risk located within the Navajo Nation.'" *Reply* at 9-10.  The Court is not persuaded by
OIC's suggestion that the Navajo tribal court would have jurisdiction over this matter, which
involves non-tribal members.  *See Montana v. United States*, 450 U.S. 544, 564 (1981) (holding
that the "exercise of tribal power beyond what is necessary to protect tribal self-government or to
control internal relations is inconsistent with the dependent status of the tribes").

sufficient to support the exercise of long-arm jurisdiction based solely on a couple's purchase of

insurance in New Mexico, without any other contact with the state.  *See State Farm Mut. Ins. Co.*

*v. Conyers*, 109 N.M. 243, 244-45, 784 P.2d 986 (1989).  By purchasing insurance in New

Mexico, the New Mexico Supreme Court noted that the couple "created continuing obligations

between State Farm and themselves" and that as such, they could reasonably contemplate that

New Mexico law would apply and that they may be haled into court in New Mexico.  *Id.* at 246.

Likewise, OIC created continuing obligations between itself and NCC when it agreed to issue

the payment and performance bond in this case such that it should reasonably contemplate being

haled into court here.

Similarly, the New Mexico Supreme Court found that a New Mexico business

purposefully availed itself of Canadian law by entering a contract to purchase Canadian trade

names.  *See Monks Own, Ltd. v. Monastery of Christ in Desert*, 2007-NMSC-054, ¶ 28, 142

N.M. 549, 168 P.3d 121.  Noting that "the names had to be registered with a Canadian

governmental office," and that the contract contained a choice of law clause providing that

Canadian law would apply, the New Mexico Supreme Court found that the New Mexico

business "has a connection with [Canada] and has acted in [Canada] in such a manner that [they]

should reasonably anticipate being haled into court there."  *Id.* (quoting *CABA Ltd. Liab. Co. v.*

*Mustang Software, Inc.*, 1999-NMCA-089, ¶ 20, 127 N.M. 556, 984 P.2d 803)(alterations in

original).  The same is true with respect to OIC, which, having entered into the bond agreement

with NCC, purposefully availed itself of the right to do business in New Mexico.

> **2.      Because the Defendants'/Third-Party Plaintiffs' Claims Arise Out of
> OIC's Issuance of the Payment and Performance Bond, the Exercise
> of Specific Jurisdiction Comports with Due Process.**

Whether the Tenth Circuit requires a but-for connection between OIC's bond and the

instant lawsuit or a proximate cause connection, *see Dudnikov*, 514 F.3d at 1078-79, it is clear

that the present litigation "arises out of" OIC's bond.  Indeed, the bond is "at the very core" of

this case.  But for the bond, there would be no basis for the Amended Third-Party Complaint.  *Id.*

at 1079.

The Court finds the United States Supreme Court's holding in *McGee v. Int'l Life Ins.*

*Co.*, 355 U.S. 220 (1957) instructive.  In that case, the Supreme Court found that California's

exercise of personal jurisdiction over a Texas insurance company satisfied due process..  There,

the Court held:

> The contract was delivered in California, the premiums were mailed from there
> and the insured was a resident of that State when he died.  It cannot be denied that
> California has a manifest interest in providing effective means of redress for its
> residents when their insurers refuse to pay claims.  These residents would be at a
> severe disadvantage if they were forced to follow the insurance company to a
> distant State in order to hold it legally accountable.  When claims were small or
> moderate individual claimants frequently could not afford the cost of bringing an
> action in a foreign forum – thus in effect making the company judgment proof.
> Often the crucial witnesses – as here on the company's defense of suicide – will
> be found in the insured's locality.

*McGee*, 355 U.S. at 223.  Acknowledging that "there may be inconvenience to the insurer" if suit

is permitted in California, the Supreme Court found this was "certainly nothing which amounts

to a denial of due process."  *Id.* at 224.  Similar to California in *McGee*, New Mexico in the

present case has a "manifest interest" in addressing claims of Summit and the Defendants/Third-

Party Plaintiffs, who would be "at a severe disadvantage" if forced to follow OIC to the Northern

Mariana Islands in order to recover on OIC's bond agreement in this case.

## IV.    CONCLUSION

For the foregoing reasons, the *Third-Party Plaintiff OIC Marianas Insurance*

*Corporation's Amended Motion to Dismiss First Amended Third-Party Complaint for Lack of*

*Personal Jurisdiction and Insufficient Service of Process*, filed January 11, 2011 (Doc. 37) is not

well-taken and is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff Summit Electric Supply Co., Inc.:

John E. Farrow, Esq.
Albuquerque, NM

Attorneys for Defendants Alutiiq Int'l Solutions, LLC
& Safeco Ins. Co. of America:

Stevan Douglas Looney, Esq.
Daniel A. Alderete, Esq.
Albuquerque, NM

Kevin A. Rosenfeld, Esq.
Mark G. Jackson, Esq.
Seattle, WA


Attorneys for Third-Party Defendant OIC Marianas Ins. Co.:

Marcus J. Rael, Jr.
Albuquerque, NM