IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA for use and
benefit of SUMMIT ELECTRIC
SUPPLY COMPANY, INC.,

       Plaintiff,

v.                                                                                                  No. 10-CV-00811 JEC/RHS

ALUTIIQ INTERNATIONAL SOLUTIONS,
LLC; and SAFECO INSURANCE COMPANY
OF AMERICA,

       Defendants,

and

ALUTIIQ INTERNATIONAL SOLUTIONS,
LLC; and SAFECO INSURANCE COMPANY
OF AMERICA

       Third-Party Plaintiffs,

v.

OIC MARIANAS INSURANCE
CORPORATION,

       Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Third-Party Plaintiff Alutiiq International Solutions, LLC's ("Alutiiq") *Unopposed Motion for Entry of Default Judgment*, filed August 9, 2011 (Doc. 66) and Third-Party Defendant OIC Marianas Insurance Company's ("OIC") *Motion to Set Aside Default and Allow Filing of an Answer and Counter-Claim*, filed December 16,

2011 (Doc. 73).  Having reviewed the pleadings, the governing authority, and being otherwise fully informed, the Court finds that OIC's *Motion to Set Aside Default and Allow Filing of an Answer and Counter-Claim* ("Motion to Set Aside") is not well-taken and will be denied and that Alutiiq's *Unopposed Motion for Entry of Default Judgment* ("Motion for Default Judgment") will be granted in part and deferred in part.

**I.     Background**

This lawsuit arises under the Miller Act, 40 U.S.C. § 3133(b)(3)(B).[1]  Alutiiq was the general contractor for construction of the Ojo Encino Day School in McKinley County, New Mexico ("the Project").  *See* Complaint ¶ 6.  Alutiiq subcontracted with NCC Electrical Services, Inc. ("NCC"), for the performance of certain electrical work for the Project.  *See* Third-Party Complaint ¶ 13.  Summit Electric Supply Company ("Summit") provided equipment and materials to NCC for use in the construction of the Project.  Compl. ¶¶ 8-9.  Summit filed this suit, contending that NCC owed it $208,142.97 plus service charges and interest, as well as attorney's fees and other costs associated with collection efforts.  *Id.* at ¶ 11.  Having given notice of its claim to Alutiiq, Summit sought payment from Alutiiq and also from Safeco Insurance Company of America ("Safeco") pursuant to the Miller Act payment bond Safeco issued.  *Id.* at ¶¶ 7 and 13-14.

Alutiiq and Safeco did not dispute that Summit was owed money relating to the Project.  Instead, they brought a Third-Party Complaint in this action against OIC, contending that OIC is liable to Summit for any losses relating to the project.  Third-Party Compl. ¶¶ 7-9.  Specifically, Alutiiq and Safeco contend that OIC assumed liability, pursuant to the payment bond it issued

---

[1] The Miller Act allows a subcontractor to sue against a payment bond posted by its contractor for nonpayment for services performed on a public works project.

for NCC's electrical work on the Project, for any failure by NCC to pay its suppliers and subcontractors. *Id*. On December 10, 2010, Alutiiq and Safeco filed an Amended Third-Party Complaint, alleging breach of payment bond and right to contractual and common law indemnification. *See generally* First Amended Third-Party Complt. (Doc. 25). On January 3, 2011, OIC filed a motion to dismiss the lawsuit, which the Court denied. *See* Doc. 56. On May 20, 2011, Alutiiq and Safeco entered into a settlement agreement with Summit for a sum of $177,00.00. *See* Alutiiq's Mot. for Default Judgment, Ex. A (Settlement Agreement and Mutual Release). On June 10, 2011, the Court entered an Order granting Robles, Rael & Anaya, P.C.'s ("RRA") Motion to Withdraw as OIC's counsel. *See* Order (Doc. 61). The Court also directed OIC to retain substitute counsel to file an appearance by June 23, 2011 and to file an answer to the First Amended Third-Party Complaint by June 29, 2011. *Id*.

    OIC did not file an Answer as directed by the Court and Alutiiq sought an entry of default against OIC. *See* Clerk's Entry of Default, dated July 5, 2011 (Doc. 64). Alutiiq then filed its Motion for Default Judgment in the amount of $177,00.00. The action was referred to the Honorable Magistrate Judge Robert H. Scott for recommendation of an ultimate disposition as to the Motion. *See* Order of Reference (Doc. 68). On December 5, 2011, Judge Scott held a hearing on Alutiiq's Motion for Default Judgment and Timothy M. Padilla, Esq., appeared on its behalf. At the hearing, Judge Scott granted a continuance of the hearing and ordered Mr. Padilla to file his Entry of Appearance and any motions or other requests for relief by December 16, 2011. *See* Doc. 69. On December 16, 2011, OIC, through Padilla, filed its Motion to Set Aside the Entry of Default.

## II. Legal Standards

### A. Setting Aside a Clerk's Entry of Default

Rule 55(b) of the Federal Rules of Civil Procedure sets forth a two-step process for a party seeking a default. *See* Fed. R. Civ. P. 55(b). First, the party must obtain the Clerk's entry of default against the opposing party. *See* Fed. R. Civ. P. 55(b). Rule 55(a) authorizes the Clerk to enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Second, the party must move the Court to enter the default judgment. *See* Fed. R. Civ. P. 55(b). Under Rule 55(c), a court may set aside a Clerk's entry of default "for good cause." Fed. R. Civ. P. 55(c). The "good cause" standard for setting aside entry of default "poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from [a default] judgment under Fed. R. Civ. P. 60(b)." *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l. Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997). Although the defaulting party bears the burden of demonstrating that the entry should be set aside, the decision to do so is committed to the sound discretion of the trial court, which is afforded significant latitude in making its determination. *Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987).

The Tenth Circuit has established three principal factors for the Court to consider when determining whether a defendant has shown good cause to set aside the entry of default: (1) whether the default resulted from culpable conduct by the defendant; (2) whether the plaintiff would be prejudiced if the Court sets aside the default; and (3) whether the defendant has presented a meritorious defense. *See Hunt v. Ford Motor Co.*, 1995 WL 523646 at *3 (10th Cir.

1995) (unpublished).[2] These factors are not "talismanic" and may be considered with other factors, yet the Court need not consider all factors. *Id.* "If the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone." *Id.* The culpability requirement is met where the moving party has "defaulted willfully or has no excuse for the default." *Hillcrest Bank v. Anzo,* 2011 WL 3299756, * 4 (D. Kan. 2011) (citing *United States v. Timbers Preserve, Routt County, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993). "A defendant's knowledge of a lawsuit and his post-service actions 'play a role in measuring the willfulness of a defendant's default.'" *Id.* (citing *Jenkins & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008)). A defendant's failure to answer or otherwise respond to the complaint after receiving actual notice or constructive notice of the complaint "demonstrates a willful disregard for the authority of the Court." *Hunt v. Ford Motor Co.*, 1995 WL 523646 at *3.

Default judgments are not favored by courts. *Katzson Bros., Inc. v. U.S. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988). However, this "judicial preference is counterbalanced by considerations of social goals, justice and expediency." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1990).

**B.     Entry of Default Judgment**

Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, a court may enter a default judgment against any defendant as to the issue of liability if it finds that the defendant was properly served in accordance with the Federal Rules of Civil Procedure and subsequently failed to answer, defend or otherwise appear in the case within the time provided in the Rules. The

---

[2]Pursuant to 10th Cir. R. 32.1, unpublished opinions, though not precedential, may be cited for their persuasive value.

factual allegations of a complaint may be taken as true against a defaulting party for purposes of considering the entry of default judgment. 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, 58-59 (3d ed. 1998).  However, "a court must first consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citations omitted).

"Once the court determines that a judgment by default should be entered, it will determine the amount and character of recovery that should be awarded." 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, 63 (3d ed. 1998). Tenth Circuit case law makes it clear that a court may not enter a default on the issue of damages without a hearing unless the amount requested is a liquidated sum or a sum capable of mathematical calculation. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983). "A plaintiff cannot satisfy the certainty requirement simply by requesting a specific amount. He or she must also establish that the amount requested is reasonable under the circumstances.'" *Tebbets v. Price Sec.*, 1995 WL 28967, at *3 (D.Kan. 1995) (unpublished) (quoting *Beck v. Atlantic Contracting Co.*, 157 F.R.D. 61, 65 (D.Kan. 1994)).

    **III.**    <u>**Analysis**</u>

        **A.**    **The Court Will Not Set Aside the Entry of Default**

OIC requests that the Court set aside the Entry of Default because it did not receive information from RRA, its former counsel, "at or during the time period between June and December [of] 2011 regarding the entry of default or his actual withdrawal from the case." Mot. to Set Aside, Ex. 1 at 2 (Affidavit of Dennis Joe Lyon, OIC Corporate Officer). OIC states that one of its mailing addresses became invalid during this time period and that it "stopped getting

much of its mail at both addresses." *Id*. at 2.  OIC asserts that it was not delinquent in hiring counsel initially and has acted quickly upon notice that it was "on the brink of default."  Mot. to Set Aside at 3.  OIC further contends that these factors, coupled with a valid defense, constitute good cause to set aside the Entry of Default.  *Id*.

Alutiiq challenges OIC's assertion of good cause, noting that its "only defense is that its liaison office in Las Vegas didn't receive mail during the pertinent time," but that "OIC's former counsel sent repeated notifications via email directly to OIC's President and Vice President, left various e-mails, and also mailed pleadings to OIC's headquarters in Saipan."  Resp. at 1; Ex. A at 1-6 (RRA's Motion to Withdraw).  Alutiiq states that it would be significantly prejudiced should the Court set aside the entry of default because of the expenses it has incurred in the past year due to "OIC's unwillingness to participate in the litigation."  *Id*. at 12; Ex. 1 at 4 (Declaration of Attorney Kevin A. Rosenfield).  OIC also states that it will also be prejudiced at trial if it is unable to obtain the testimony of its former project manager, Mike Gurley, who is no longer with the company and whose whereabouts are unknown.  *Id*.  Alutiiq adds that OIC does not have a meritorious defense because the "terms of the payment bond are incontrovertible and undisputed" and the "only proffered defense . . . is not available to OIC due to lack of standing and privity."  *Id*. at 2.  OIC does not dispute that its former counsel contacted it by e-mail, fax, and certified mail regarding the need to hire new counsel and file an Answer and sent pleadings and e-mails to its headquarters in Saipan.  OIC simply responds that "Alutiiq does not accept that at any point the communication between counsel and client can be severed."  Reply at 2.

A defendant's failure to answer or otherwise respond to the complaint after receiving actual notice or constructive notice of the complaint "demonstrates a willful disregard for the authority of the Court."  *Hunt v. Ford Motor Co.*, 1995 WL 523646 at *3.  The record

7

demonstrates that OIC had actual notice of the Complaint and notice of its deadline to file an Answer. Indeed, on May 3, 2011, RRA informed OIC by email, fax and certified mail of its intent to withdraw as counsel if OIC did not respond by the close of business on May 5, 2011, and of OIC's need to retain substitute counsel and file an Answer by May 16, 2011 in that event. Resp., Ex. A at 6. In addition, the Court gave OIC an enlargement of time to file its Answer. *See* Order (Doc. 61). Even if there were an internal breakdown in communication, OIC still had a duty to monitor its case and keep the Court and parties apprised of any address changes. Thus, under these circumstances, OIC's failure to file an Answer "demonstrates a willful disregard for the authority of this Court" and meets the culpability requirement. *Hunt v. Ford Motor Co.*, 1995 WL 523646, at *3.

Setting aside the entry of default would also prejudice Alutiiq in the form of expenses and lost witnesses. Assuming, *arguendo,* that Alutiiq has a meritorious defense, the resulting prejudice to Alutiiq, coupled with OIC's willful conduct, weigh heavily against setting aside the entry of default. Although the preferred disposition of any case is upon the merits and not by default judgment, this judicial preference is counterbalanced by considerations of social goals, justice and expediency, and "a workable system of justice requires that litigants not be free to appear at their pleasure." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc*., 715 F.2d 1442, 1444-45 (10th Cir. 1983). Given its actual notice of the Complaint and of the deadline to file an Answer, OIC has failed to demonstrate good cause for setting aside the default. Accordingly, the Court will not set aside the entry of default.

### B. The Court Will Enter a Default Judgment as to Liability and Hold a Hearing as to Damages

Upon entry of default, a court considers "whether the facts alleged in the complaint and

accepted as true constitute a legitimate cause of action." *Bixler v. Foster*, 596 F.3d 751 at 762. The Court has reviewed the unchallenged facts in the First Amended Third-Party Complaint and determined that Alutiiq has pled viable claims for breach of payment bond and indemnification. *Id*. Accordingly, the Court will enter a default judgment as to liability. However, an entry of default judgment as to liability does not automatically establish the amount of damages. Rather, the amount requested must be a sum certain and reasonable under the circumstances. *See Tebbets*, 1995 WL 28967, at *3.

Alutiiq asserts that the settlement arrived at between it and Summit in the amount of $177,00.00 is a sum certain for purposes of entering a default judgment. *See* Mot. for Default Judgment at 1. However, the fact that Summit's claims against Alutiiq and Safeco were settled for a specific amount does not create a "sum certain" for purposes of damages. *Byrd v. Keene Corp. v. Cape Industries*, 104 F.R.D. 10 (E.D. Penn. 1984). In *Byrd*, the court declined an invitation to enter a default judgment based on the settlement amount of a third-party claim, reasoning that the third-party defendant's interests were not represented in the settlement negotiations. *Id*. at 12. The court determined that a hearing was necessary to evaluate the reasonableness of the settlement amount, and that the party requesting default must show that it would have been entitled to at least the amount of damages requested had it established liability at trial. *Id*. at 12-13. The *Byrd* court also concluded that a hearing was necessary to ascertain whether the defaulting party was liable under a theory or indemnity or contribution, adding that an apportionment of damages would be necessary under the latter theory of liability. *Id*.

The Court finds the reasoning in *Byrd* to be persuasive and concludes that a hearing on the issue of damages is necessary in order to determine whether the amount requested is reasonable under the circumstances. The inquiry of reasonableness will also address OIC's

request that any damages be offset by Alutiiq's alleged nonpayment for services, labor and equipment. Mot. to Set Aside at 2; 10. Accordingly, this matter will be referred to United States Magistrate Judge Scott for a hearing on these issues and for the preparation of proposed findings of fact and recommendations as to the appropriate amount of default judgment in this case pursuant to 28 U.S.C. § 636(b)(1)(B).

WHEREFORE,

    I.    **IT IS ORDERED** that OIC's *Motion to Set Aside Default and Allow Filing of an Answer and Counter-Claim*, filed December 16, 2011 (Doc. 73) is **DENIED**; and

    II.    **IT IS FURTHER ORDERED** that Alutiiq's *Unopposed Motion for Entry of Default Judgment*, filed August 9, 2011 (Doc. 66), is **GRANTED** in part as to liability and deferred as to damages, and;

    III.    **IT IS FINALLY ORDERED** that Alutiiq's request for entry of default judgment as to damages is referred back to United States Magistrate Judge Robert H. Scott for: (1) a hearing on the reasonableness of damages and the availability and reasonableness of an offset of damages; and (2) preparation of proposed findings of fact and recommendations as to the amount of the default judgment pursuant to 28 U.S.C. § 636(b)(1)(B).

Dated May 25, 2012.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Third-Party Plaintiff Alutiiq International Solutions, LLC

>Steven D. Looney
>Sutin, Thayer & Browne
>Albuquerque, NM
>
>Mark G. Jackson
>Kevin A. Rosenfield
>Ball Janik LLP
>Seattle, WA

Attorneys for Third-Party Defendanr OIC Marinas Insurance Corporation:

>Timothy M. Padilla
>Padilla & Associates
>Albuquerque, NM
>
>Joshua R. Simms
>Albuquerque, NM